UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BESSIE CONNER<br>c/o her attorneys Tittle & Perlmuter<br>2012 West 25th Street, Ste. 716<br>Cleveland, OH 44113<br><br>On behalf of herself and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>CONSUMER SUPPORT SERVICES, INC.<br>c/o its Statutory Agent<br>Randall Nipps<br>2040 Cherry Valley Road<br>Newark, Ohio 43055<br><br>Defendant. | CASE NO.<br><br>JUDGE<br><br>Magistrate Judge<br><br><br><br>**PLAINTIFF'S CLASS AND COLLECTIVE ACTION COMPLAINT UNDER THE FAIR LABOR STANDARD ACT AND STATE LAW WITH JURY DEMAND** |

Plaintiff Bessie Conner, through counsel, for her Class and Collective Action Complaint against Defendant Consumer Support Services, Inc., states and alleges as follows:

**INTRODUCTION**

1. This case challenges practices of Defendant by which it willfully violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as the Ohio Constitution art. II, § 34a, the Ohio overtime compensation statute, Ohio Rev. Code Ann. § 4111.03, and Ohio's Prompt Pay Act, Ohio Rev. Code Ann. § 4113.15, .

2. Plaintiff brings this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability" prescribed by

the FLSA "may be maintained against any employer … by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." Plaintiff brings this case on behalf of herself and other "similarly-situated" persons who may join the case pursuant to § 216(b) (the "Potential Opt-Ins").

3. Plaintiff also brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and other members of a class of persons, defined herein (the "Ohio Class"), who assert factually-related claims under Ohio's overtime compensation statute and Prompt Pay Act.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

5. This Court has supplemental jurisdiction over Plaintiff's state-law claims because those claims are so related to the FLSA claims as to form part of the same case or controversy.

6. Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this district and division, having conducted continuous business at the dozens of group homes that it owns and operates within the territorial jurisdiction of this Court. Moreover, as described below, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district and division.

## PARTIES

7. At all times relevant, Plaintiff Bessie Conner was a citizen of the United States and resident of Cuyahoga County, Ohio.

8. Defendant Consumer Support Services, Inc. is an Ohio corporation that conducts its business at dozens of locations in northern Ohio, including roughly 15 in Cuyahoga County. Its Cuyahoga County operations are headquartered at 6505 Rockside Rd., Independence, Ohio, and Bessie Conner conducted nearly all of her job duties from Defendant's Independence, Ohio office, a group home in Cleveland, Ohio, and her home in Richmond Heights, Ohio.

9. According to records maintained by the Ohio Secretary of State, Defendant's statutory agent for service of process is Randall Nipps, 2040 Cherry Valley Road, Newark, Ohio.

## FACTUAL ALLEGATIONS

### Defendant's Business

10. Consumer Support Services, Inc. provides housing and support services to individuals with disabilities throughout Ohio.

11. One such housing and support service is conducted through the ownership and operation of group homes for individuals with developmental disabilities throughout Ohio. According to its website, "[t]he care [Consumer Support Services] provide[s] at a variety of fully equipped residential settings (from assisted living to skilled care)… allows [its] residents to live life to the fullest as a part of their communities."

### Defendant's Employment of Plaintiff, the Opt-Ins, and Class Members

12. Plaintiff, the Potential Opt-Ins who have joined this case pursuant to 29 U.S.C. § 216(b), and all members of the Ohio Class worked for Defendant as "team leads," "site supervisors," or under both classifications during their employment.

13. Defendant's group homes are staffed with Homemaker/Personal Care staff ("HPCs"), "team leads," and "site supervisors."

14. HPCs, team leads, and site supervisors all assist with certain tasks at Defendant's group homes, including taking residents to appointments, passing medications, shopping for residents' groceries, preparing meals, cleaning the group home, and assisting with residents' activities of daily living.

15. Team leads bear the additional responsibility of responding to staffing and resident care concerns off-site via text messages and phone calls through their personal and Defendant-provided mobile phones. If a group home is understaffed and no coverage from HPCs is available, team leads are responsible for picking up additional shifts.

16. Site supervisors similarly use personal and Defendant-provided mobile phones to address staffing and resident care concerns. Site supervisors also bear the responsibility of responding the staffing and resident care concerns off-site via company email.

17. Plaintiff Bessie Conner was employed by Defendant from roughly January 17, 2017 through March 5, 2020, all at/for a group home in Cleveland, Ohio. She began her tenure with Defendant as an HPC, transitioned to team lead in mid-2017, and then transitioned again to site supervisor in November 2018.

4

### Defendants' Status as "Employers"

18. Defendant was an "employer" of Plaintiff, the Potential Opt-Ins, and the Ohio Class Members within the meaning of the FLSA, 29 U.S.C. § 203(d).

19. At all times relevant, Defendant was an enterprise within the meaning of 29 U.S.C. § 203(r), and an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

### Defendants' Failed to Pay Employees for All Hours Worked

20. The FLSA and Ohio law required Consumer Support Services to pay employees for all hours they were "suffer[ed] or … permit[ted] to work." 29 U.S.C. § 203(g); O.R.C. § 4111.03(D)(1).

21. Consumer Support Services did not pay Plaintiff, the Potential Opt-Ins, and the Ohio Class Members for all of the hours they were suffered or permitted to work. Rather, Consumer Support Services expected and required them to perform unpaid work before the start of their paid shifts, to continue to work past the end of their paid shifts, and to perform other compensable work off-the-clock.

22. Consumer Support Services' team leads and site supervisors were typically scheduled to work forty-hour weeks. Oftentimes, the demands of the job and staffing issues required that team leads and site supervisors pick up additional shifts, arrive at their assigned group home early, stay late past their scheduled stop time, and/or work from off-site.

23. Team leads and site supervisors were provided mobile phones to make/answer work calls, texts, and e-mails. With those phones they were effectively required to be on-call for all hours that they were not on-site and not on-the-clock.

24. On a daily basis, team leads and site supervisors were required to perform hours of uncompensated but integral, necessary work via their phones during their off-site, off-the-clock hours.

25. For instance, every single day, team leads and site supervisors were required to respond to and address numerous urgent staffing and resident care needs during "off-the-clock" hours. Plaintiff, the Potential Opt-Ins, and the Ohio Class were not compensated for this working time.

26. Defendant knew, and in many cases mandated, that such work be performed by team leads and site supervisors' off-the-clock.

27. Team leads and site supervisors regularly registered complaints with Consumer Support Services' administrators about the non-stop demands of their jobs. By way of example, but by no means the only example, a letter written to Consumer Support Services administrators by its team leads and site supervisors is copied below:

> To whom it may concern:
>
> I'm writing this on behalf of all the supervisors/team leads. We feel we are not being backed up when it comes to the staff. On several occasions staff pick up shifts but then call off, leaving the shift to be filled by the supervisor/team lead.
>
> We understand the need for a paper trail, but we need a better solution. Staff can see how understaffed we are, and use this to their advantage. Supervisors are forced to let some smaller broken rules slide, in order to get just a few hours off during an entire week. Supervisors look past the small things to avoid staff call offs or refusal to work extra shifts. The rules for picking up extra shifts at other sites need to change.
>
> Furthermore, when supervisors talk or discipline staff, we receive disciplinary action, based on staff's false statements. This leaves supervisors feeling further unable to discipline staff, and extremely undervalued and unheard.
>
> With that, when a staff member is having problems within a site, and then sent to several other sites and still is having issues, further discipline should happen. If three site supervisors have expressed issues with a staff member, at that point the supervisors account should be heard.
>
> Also, when new staff is hired supervisors need the new hires start dates, and which training will be/have been completed. Supervisors should have a list of *all staff training expirations/dates*. When CPR/Med Passing etc expires we are removed from schedule, but supervisors don't get advance notice of needed training. With appropriate information, supervisors can schedule people accordingly. We are short staffed so, being proactive and planning for needed training can allow supervisors and team leads much needed hours off.
>
> Our goal is to provide the best and safest place for our consumers to live and grow. Our PC's have many jobs to do and when we discuss updates about our sites, it is usually at a time where they have other tasks that are still required to be completed. It is understandle that during our scheduled hour with our PC they will not be able to give their undivided attention, however site supervisors are being reprimanded because PC's say they do not recall the updates. A simple solution to this could be a form that PC and Site Supervisors fill out during the hour update meetings.
>
> Site Team leads play a crucial role in our daily operations. They need to have more support from upper management, as they are the major ground workers, dealing with staff schedules and complaints, and filling in shifts that supervisors cannot. A solution to this could be weekly or biweekly team lead update meetings.
>
> The site supervisors and team leads truly hope that this document will help CSS grow and improve. We hope to make CSS the quality care our consumers deserve. With a few changes and updates we know that every staff member will be successful.
>
> Thank you,
> CSS Site Supervisory Teams

28. As reflected in that letter, Defendant was made well-aware that Plaintiff, the Potential Opt-Ins, and the Ohio Class Members struggled "to get just a few hours off during an entire week," and that Consumer Support Services was "short staffed so… supervisors and team leads [were deprived of] much needed time off."

29. As a result of practices such as those described in Paragraphs 21 through 28, Plaintiff, the Potential Opt-Ins, and the Ohio Class Members were deprived of regular and overtime pay earned.

30. Plaintiff, the Potential Opt-Ins, and the Ohio Class Members frequently worked forty or more hours per workweek, and thus, absent Defendant's failure to pay

7

for all hours worked including by the practices described in Paragraphs 21 through 28, would have received overtime compensation, or additional overtime compensation.

### The Willfulness of Defendant's Violations

31. Defendant knew that Plaintiff, the Potential Opt-Ins, and the Ohio Class Members were entitled to compensation for all hours worked and overtime compensation for hours over 40 in a workweek under both federal and state law, or acted in reckless disregard for whether they were so entitled.

32. Defendant intentionally and willfully circumvented the requirements of the FLSA and state law. Consumer Support Services designed their scheduling, timekeeping, and payroll practices in an attempt to reduce employees' paid hours and circumvent federal and state wage-and-hour laws.

### COLLECTIVE ACTION ALLEGATIONS

33. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

34. Plaintiff brings this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability "prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and in behalf of themselves and other employees similarly situated. "

35. The Potential Opt-Ins who are "similarly situated" to Plaintiff with respect to Consumer Support Services' FLSA violations consist of:

> All site supervisors and team leads for Consumer Support Services who worked during the period three years preceding the commencement of this action to the present.

36. Such persons are "similarly situated" with respect to Defendants' FLSA violations in that all were subject to and injured by Defendants' unlawful timekeeping and payroll practices, and all have the same claims against Defendants for unpaid minimum wages and overtime compensation, as well as for liquidated damages, attorneys' fees, and costs.

37. Conditional certification of this case as a collective action pursuant to 29 U.S.C. § 216(b) was proper and necessary, and all such persons were sent a Court-authorized notice informing them of the pendency of the action and giving them the opportunity to "opt in."

38. Upon information and belief, the number of similarly-situated persons exceeds 100 persons.

## CLASS ACTION ALLEGATIONS

39. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

40. Plaintiff brings this case on behalf of themselves and other members of a proposed Ohio Class, defined as:

> All site supervisors and team leads for Consumer Support Services who worked during the period three years preceding the commencement of this action to the present.

41. The Ohio Class is so numerous that joinder of all Class Members is impracticable. Plaintiff avers, upon information and belief, that the Ohio Class totals in excess of 100 employees of Defendants. The number of Class Members as well as their identities are ascertainable from records Consumer Support Services has maintained, and

was required to maintain, pursuant to the FLSA and Ohio law. 29 U.S.C. § 211(c) & 29 C.F.R. § 215.2; Ohio Const. art. II, § 34a.

42. Questions of law or fact common to the Ohio Class predominate, including but not limited to:

   a) Whether Consumer Support Services required Plaintiff and other Class Members to perform unpaid work before the start of their paid shifts and after the end of their paid shifts.

   b) Whether Consumer Support Services knew or should have known that Class Members were working off-the-clock, but still failed to pay them.

   c) Whether Consumer Support Services violated Ohio law by failing timely to pay Class Members for all hours worked on a semi-monthly basis, and never rectifying that failure to pay in a timely manner.

   d) Whether Consumer Support Services deprived Plaintiff and other Class Members of overtime compensation at one and one-half times their "regular rate" for hours worked in excess of forty hours in a workweek.

43. Plaintiff's claims are typical of the claims of other members of the Ohio Class. Plaintiff's claims arise out of the same uniform course of conduct by Defendant, and are based on the same legal theories, as the claims of other Class Members.

44. Plaintiff will fairly and adequately protect the interests of the Ohio Class. Plaintiff's interests are not antagonistic to, but rather are in unison with, the interests of other Class Members. Plaintiff's counsel has broad experience in handling class action litigation, including wage-and-hour litigation, and are fully qualified to prosecute the claims of the Ohio Class in this case.

45. The questions of law or fact that are common to the Ohio Class predominate over any questions affecting only individual members. The primary questions that will

determine Defendant's liability to the class, listed above, are common to the class as a whole, and predominate over any questions affecting only individual class members.

46. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case as a class action pursuant to FED. R. CIV. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## COUNT ONE
**(FLSA Minimum Wage and Overtime Violations)**

47. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

48. Plaintiff bring this claim for violation of the FLSA's overtime provisions on behalf of themselves and the Potential Opt-Ins who may join this case pursuant to 29 U.S.C. § 216(b). Plaintiff's written consent to be a party to this action pursuant to § 216(b) are filed herewith, as are the consents of Brandi Frazier, Eric MacArthur, Sheronda Glenn, Tiffany Smith, and Tenisha Chambers.

49. The FLSA required Defendant to pay their non-exempt employees at least the minimum wage, and to pay them overtime compensation at one and one-half times their "regular rate" for all hours worked in excess of forty hours in a workweek. 29 U.S.C. §§ 206, 207(e)(3); 29 C.F.R. 778.117.

50. Defendant failed to pay minimum wages for all hours worked, and failed to pay overtime compensation to Plaintiff and the Potential Opt-Ins for all hours worked in excess of forty hours in a workweek. As more fully described above, Defendant, in violation of law, required them to perform unpaid work before the start of their paid shifts and to continue to work past the end of their paid shifts.

51. By engaging in these practices, Defendant willfully violated the FLSA and regulations thereunder that have the force and effect of law.

52. As a result of Defendant's violations of the FLSA, Plaintiff and the Potential Opt-Ins were injured in that they did not receive minimum wages and overtime compensation due to them pursuant to the FLSA. Section 216(b) of the FLSA entitles them to an award of unpaid overtime compensation, as well as "an additional equal amount as liquidated damages." Section 216(b) further provides that "[t]he court … shall … allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

## COUNT TWO
**(Ohio Overtime Violations)**

53. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

54. Plaintiff brings this claim for violation of the Ohio overtime compensation statute, Ohio Rev. Code Ann. § 4111.03, on behalf of herself, the Potential Opt-Ins, and the Ohio Class Members.

55. At all times relevant, Defendant was an employer covered by the Ohio overtime compensation statute, Ohio Rev. Code Ann. § 4111.03.

56. Defendant violated the Ohio overtime compensation statute, Ohio Rev. Code Ann. § 4111.03, by failing to pay all overtime compensation to its site supervisors and team leaders when due.

57. Defendant's violations of Ohio Rev. Code Ann. § 4111.03 injured Plaintiff, the Potential Opt-Ins, and the Ohio Class Members in that they did not receive overtime compensation due to them pursuant to that statute.

58. Ohio Rev. Code Ann. § 4111.10(A) provides that Defendant, having violated § 4111.03, are "liable to the employee[s] affected for the full amount of the overtime wage rate, less any amount actually paid to the employee[s] by the employer, and for costs and reasonable attorney's fees as may be allowed by the court."

## COUNT THREE
**(Ohio Minimum Wage Violations)**

59. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

60. The Ohio Fair Minimum Wage Amendment ("OMFWA"), Ohio Constitution art. II, § 34a, required the Defendant to pay their employees at least the minimum wage.

61. Defendant failed to pay minimum wages to Plaintiff, the Opt-Ins, and the Ohio Class Members, in violation of the OMFWA. The OMFWA entitles them to "equitable and monetary relief" including "two times the amount of the back wages."

## COUNT FOUR
**(Ohio Prompt Pay Act Violations)**

62. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

63. Ohio's Prompt Pay Act, Ohio Rev. Code Ann. § 4113.15(A), provides that "[e]very employer doing business in this state shall, on or before the first day of each month, pay all its employees the wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and shall, on or before the fifteenth day of each month, pay such employees the wages earned by them during the last half of the preceding calendar month."

64. Defendant failed to pay all wages due under Ohio's Prompt Pay Act to Plaintiff and the Ohio Class Members entitles them to the unpaid wages, plus "an amount equal to six per cent of the amount of the claim still unpaid and not in contest or disputed or two hundred dollars, whichever is greater."

## COUNT FIVE
### (Ohio Record-Keeping Violations)

65. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

66. The OMFWA required Defendant to maintain accurate and complete records of employees' time. Ohio Const. art. II, § 34a.

67. Defendant violated the OMFWA's record-keeping requirement by failing to maintain accurate and complete records of its site supervisor and team leads' working time.

68. As a result of Defendant's record-keeping violations, Plaintiff and the Ohio Class Members were injured in that Consumer Support Services does not have accurate and complete records of their working hours.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Conditionally certify this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b) and direct that Court-approved notice be issued to similarly-situated persons informing them of this action and enabling them to opt in;

B. Certify this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of Plaintiff and other members of the Ohio Class;

C. Enter judgment against Defendant and in favor of Plaintiff, the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b), and the Ohio Class;

D. Award compensatory damages to Plaintiff, the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b), and the Ohio Class in the amount of their unpaid wages and commissions, as well as liquidated damages in an equal amount;

E. Award Plaintiff her costs and attorneys' fees incurred in prosecuting this action and such further relief as the Court deems equitable and just.

Respectfully submitted,

s/ Scott D. Perlmuter
Scott D. Perlmuter (0082856)
2012 West 25th Street, Suite 716
Cleveland, OH 44113
216-308-1522

Fax: 888-604-9299
scott@tittlelawfirm.com

/s/ Joshua B. Fuchs
Joshua B. Fuchs (0087066)
**THE FUCHS FIRM LLC**
3961 Silsby Road
University Heights, Ohio 44113
216-505-7500 [phone and fax]
jfuchs@crklaw.com

Attorneys for Plaintiff

JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

s/ Scott D. Perlmuter
Scott D. Perlmuter (0082856)